**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LEONARD POE,

      *Plaintiff*,

  v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY, *et al.*,

      *Defendants*.

Civil Action No. 24-03086 (AHA)

**Memorandum Opinion and Order**

Leonard Poe sues the Washington Metropolitan Area Transit Authority ("WMATA") and

a WMATA bus driver, for negligence that caused a bus door to close on his leg. WMATA moves

for summary judgment, arguing Poe cannot establish the applicable standard of care without expert

testimony, the incident cannot have occurred as alleged, and Poe cannot recover future medical

expenses. The court grants in part and denies in part WMATA's motion for summary judgment.

I.     **Background**[1]

According to Poe, as he was boarding a bus in D.C., the bus door closed on his leg, and the

bus moved about 60 to 75 yards while his leg was still stuck in the door. ECF No. 21-6 at 3–6. Poe

sued WMATA, claiming it is responsible for the bus driver's negligence and asserting the bus

driver "negligently failed to maintain control of [the] vehicle, operated [the] vehicle at an

unreasonable rate of speed for the conditions then existing, negligently failed to dedicate full time

---

[1]  As required at this stage, the court considers the evidence in the light most favorable to Poe and draws all reasonable inferences in Poe's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

and attention to the operation of [the] vehicle, negligently disobeyed the vehicular laws and regulations of the District of Columbia, and negligently closed the bus door on Mr. Poe's left leg." ECF No. 13 ¶ 8. He alleges the negligence caused injuries and seeks damages for both past and future medical expenses. *Id.* ¶¶ 9–10; ECF No. 21-2 ¶ 26.

WMATA moves for summary judgment, arguing that Poe cannot establish the standard of care without expert testimony and cannot show there is a genuine and material issue as to whether the bus driver closed the door on his leg and then drove the bus because WMATA's expert witness's testimony forecloses Poe's version of what happened. ECF No. 21. WMATA also argues that Poe has not shown he needs future medical treatment. *Id.*

## II.    Discussion

The court concludes that Poe does not need an expert to establish the standard of care and that he has raised a triable issue as to whether the incident occurred as alleged but that he has not raised any triable issue about damages for future medical care.

Summary judgment is proper when the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing the record, the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The party opposing summary judgment must point to evidence that "a reasonable jury could credit in support of each essential element of [his] claims." *Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015). The moving party is entitled to summary judgment if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

2

**A. Poe Does Not Need Expert Testimony To Establish The Standard Of Care**

WMATA argues Poe cannot show a prima facie case of negligence because he has not provided expert testimony about the standard of care for operating a public transit bus. ECF No. 21-1 at 5–12. But, while there may be circumstances related to bus operation that need expert testimony, it is not needed here, where the issue—closing the door while someone is still in the doorway and then driving forward—can be decided based on common knowledge and everyday experience. There is, of course, a dispute as to whether the bus driver closed the door on Poe's leg and drove while his leg was still stuck in the first place, and that is for the jury to resolve.

The parties appear to agree WMATA is directly liable for a bus driver's negligence. *See* D.C. Code § 9-1107.01(80) ("The Authority shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agent committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory."). And the parties also appear to agree that Poe's negligence claim is governed by D.C. law, requiring him to show "(1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; and (3) the defendant's breach proximately caused the plaintiff's harm." *Whiteru v. Wash. Metro. Area Transit Auth.*, 25 F.4th 1053, 1057 (D.C. Cir. 2022) (citing *Wash. Metro. Area Transit Auth. v. Ferguson*, 977 A.2d 375, 377 (D.C. 2009)); *see Robinson v. Wash. Metro. Area Transit Auth.*, 774 F.3d 33, 37–38 (D.C. Cir. 2014); ECF No. 21-1 at 4. A plaintiff's failure to establish the standard of care is "fatal to a negligence claim." *Briggs v. Wash. Metro. Area Transit Auth.*, 481 F.3d 839, 841, 848 (D.C. Cir. 2007) (citation omitted).

"Ordinarily, the applicable standard of care is the traditional reasonable person standard, which the jury can ascertain without the aid of expert testimony." *Robinson*, 774 F.3d at 39 (cleaned up). But a plaintiff must offer an expert to show the standard of care "if the subject in question is so distinctly related to some science, profession or occupation as to be beyond the ken

3

of the average layperson," unless it is "'within the realm of common knowledge and everyday experience' of the jurors." *Godfrey v. Iverson*, 559 F.3d 569, 572 (D.C. Cir. 2009) (quoting *District of Columbia v. Arnold & Porter*, 756 A.2d 427, 433 (D.C. 2000)).

Poe's claim involves the kind of standard of care that the jury can ascertain from its own experience, without an expert. According to Poe's evidence, the bus driver closed the door on his leg when he was entering the bus and then drove forward about 60 to 75 yards while his leg was still stuck in the door. ECF No. 22-3 at 44–47. Poe has also offered evidence that he yelled at the bus driver about his leg being stuck, but the bus driver didn't do anything about it. *Id.* at 47–49, 51; *see also* ECF No. 22-5 at 30–31, 38. The critical questions here—whether it is reasonable to close the door when someone is in the doorway or drive forward while someone's leg is stuck in the door—are the sort that jurors have an understanding of from their own experience driving cars and riding buses. *Montgomery v. Wash. Metro. Area Transit Auth.*, No. 25-7044, 2026 WL 880250, at *2 (D.C. Cir. Mar. 31, 2026) ("A juror is likely to have driven a car before and therefore has some understanding of the standard of care for driving buses" (cleaned up)); *Walls v. Wash. Metro. Area Transit Auth.*, No. 19-cv-02623, 2021 WL 8875534, at *1 (D.D.C. Dec. 14, 2021) (holding that an expert was "not required to establish the standard of care" where the plaintiff claimed that "WMATA's bus driver was negligent for completely shutting down the bus, and thereby disabling a safety sensor, without checking that passengers were clear of the doors, which caused her arm to become trapped in closed doors").

WMATA says that Poe needs an expert because this case involves "bus operation," but that sweeps too broadly. ECF No. 21-1 at 8–9. To be sure, courts have required expert testimony in cases involving motor vehicles where the standard of care at issue goes beyond the realm of common experience. *See Thomas v. Wash. Metro. Area Transit Auth.*, No. 22-cv-3097, 2024 WL

4103706, at *5 (D.D.C. Sept. 6, 2024) (holding expert testimony was needed to establish the standard of care for "how close a Metrobus driver must get to the curb for a disabled passenger to safely disembark"); *Bush v. Wash. Metro. Area Transit Auth.*, No. 19-cv-930, 2020 WL 921419, at *5 (D.D.C. Feb. 26, 2020) (holding expert testimony was needed to show the standard of care when deboarding a passenger from a paratransit van because the "added responsibility" of transporting "passengers with disabilities or special needs" takes the "operations even further outside the realm of common knowledge"). And WMATA may be correct that, without an expert, Poe could not advance certain theories of negligence related to a bus door—for example, that WMATA did not adequately maintain bus systems related to the door or that there were defects in WMATA's door sensors—that are "beyond the ken of the average layperson." *Godfrey*, 559 F.3d at 572 (citation omitted).

It is also true, as our circuit has observed, that "[t]he D.C. Court of Appeals has required expert testimony in a number of cases that, on first blush, appear to be within the realm of common knowledge." *Briggs*, 481 F.3d at 845. But, as the circuit has explained, "expert testimony is not always necessary to prove negligence in the operation of public transit *buses*," specifically because "jurors likely have experience driving similar vehicles, such as cars." *Montgomery*, 2026 WL 880250, at *2. Indeed, the circuit has suggested that an expert may not be necessary to show the standard of care a bus driver must exercise concerning checking that passengers are secure before leaving a bus stop. *Robinson*, 774 F.3d at 36–37, 39. The court expressed "serious[] doubt that determining whether it is reasonable to start a motor vehicle without checking to make sure one's passengers are secure is outside 'the realm of common knowledge and everyday experience' of average jurors." *Id.* at 39 (quoting *Godfrey*, 559 F.3d at 572). The same is true if, as Poe claims, the bus driver closed the door on Poe's leg and then drove while his leg was still stuck in the

5

doorway. Therefore, the court cannot grant summary judgment to WMATA simply because Poe has not had an expert show the standard of care.

### B. Poe Has Raised A Triable Issue As To Whether The Bus Driver Closed The Door On His Leg And Then Drove The Bus

WMATA also argues there is no genuine and material dispute as to whether the bus driver closed the door on Poe's leg and drove the bus while his leg was stuck in the door. ECF No. 21-1 at 12–17. But Poe has pointed to evidence that "a reasonable jury could credit" in support of his version of the facts. *Grimes*, 794 F.3d at 94. Poe testified in his deposition that the bus driver closed the door on his leg as he was boarding the bus and then drove the bus for approximately 60 to 75 yards while his leg was still stuck in the door before stopping. ECF No. 22-3 at 44–47. Poe also testified that he yelled at the driver while his leg was stuck, and the driver asked what he wanted her to do, looked at him, and continued to drive. *Id.* at 47–51, 53–54. And a witness, Chantrel Carter, testified that she was on the bus and heard Poe complaining that the door closed on his leg. ECF No. 22-5 at 22–23, 31, 38. Poe also points to a record showing that he reported the incident to WMATA the day after it occurred. *See* ECF No. 22-2; ECF No. 22-4 ¶ 7.

WMATA asks the court to conclude these events never happened, dismissing Poe's testimony as self-serving and insufficient to give rise to a factual dispute and dismissing Carter's testimony because she heard, but did not see, the incident, and her testimony has inconsistencies. ECF No. 21-1 at 14–16; ECF No. 23 at 8–9. But while a party's testimony "will usually, in some sense, be 'self-serving,'" parties, "like other fact witnesses, are legally competent to give material testimony" and in many cases "are the key, or even sole, witnesses." *Johnson v. Perez*, 823 F.3d 701, 710 (D.C. Cir. 2016). WMATA argues that Carter's testimony lacks foundation and is therefore inadmissible because Carter testified that she did not see the incident and did not hear what was said between Poe and the bus driver, she provided a timeline inconsistent with Poe's

6

account, and there was no activity on Carter's metro card on the day in question. ECF No. 21-1 at 15–16; ECF No. 23 at 8–9. But Carter testified that she was on the bus when the incident occurred and heard Poe complaining that the door had closed on his leg, which is sufficient at this stage. ECF No. 22-5 at 22–23, 31, 38; *see Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000) (explaining that, at summary judgment, evidence is properly considered if it is "capable of being converted into admissible evidence"); Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."). And WMATA's concerns about the inconsistencies in Carter's testimony sound in credibility, not admissibility—that is, they are issues for the jury to decide. *See Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at summary judgment." (citation omitted)).

WMATA also asks the court to conclude that Poe's version of events never happened because WMATA's expert says it couldn't have happened. ECF No. 21-1 at 12–15. According to the expert, the bus's electrical system architecture logic and operating code would not permit the bus to move if the front doors could not close, and the bus maintenance records reveal no issues with the system. ECF No. 21-13 ¶¶ 4–8. Because Poe has not offered any evidence that the bus system malfunctioned or was overridden, WMATA says, he cannot show that the events he testified about ever happened. ECF No. 21-1 at 17; ECF No. 23 at 7. But that too misunderstands the court's role at this stage. WMATA's expert testimony may undermine Poe's and his witness's accounts, but that does not mean the court can simply credit it in place of the jury. Drawing all reasonable inferences in Poe's favor, as the court must, a reasonable jury could conceivably find

in Poe's favor on the issue of whether the bus door closed on his leg and the bus drove while his leg was stuck in the door.[2]

### C. Poe Has Not Shown A Triable Issue As To Damages For Future Medical Care

Although Poe has shown there is a genuine and material issue as to whether the incident occurred as alleged, he has not shown a triable issue as to whether he may obtain damages for future medical care.

To recover future damages caused by a tort, a plaintiff must show the future consequences of the tort are "reasonably certain." *Wilson v. Johns–Manville Sales Corp.*, 684 F.2d 111, 119 (D.C. Cir. 1982). "Unless there is nonspeculative evidence demonstrating that future suffering, additional medical expense, and loss of income will occur, the question should not be submitted to the jury." *Croley v. Republican Nat'l Comm.*, 759 A.2d 682, 690 (D.C. 2000) (quoting *Curry v. Giant Food Co. of D.C.*, 522 A.2d 1283, 1291 (D.C. 1987)).

WMATA argues Poe has not offered evidence that, if true, shows a reasonable certainty that he will need future medical care, and the court agrees. *See* ECF No. 21-1 at 17–19. Poe's own medical expert, Dr. Evan Argintar, testified that Poe is "at maximum medical improvement and requires no further medical treatment." ECF No. 21-12 at 2; *see* ECF No. 22-7 at 5. While Dr.

---

[2]   WMATA argues Poe has admitted the facts in its statement of material facts by failing to rebut them in his own statement. ECF No. 23 at 2–4; *see* Local Civ. R. 7(h)(1). But WMATA's statement of material facts does not say that the bus doors could not have closed on Poe's leg. *See* ECF No. 21-2. Indeed, as described in the statement of material facts, WMATA's expert testified only that the bus could not have driven while the door was closed on Poe's leg, not that the door could not have closed on his leg in the first place. *Id.* ¶¶ 9–15; ECF No. 21-13 ¶¶ 4–7. In any event, the court exercises its discretion not to treat WMATA's factual assertions as admitted. *See Arrington v. United States*, 473 F.3d 329, 335 (D.C. Cir. 2006) (noting that Local Civil Rule 7(h) "permits, but does not require," courts to treat facts identified by the moving party in a statement of material facts as admitted where the nonmoving party does not controvert those facts in a statement of genuine issues filed in opposition to the motion). While WMATA's expert testimony may be used as a basis to undermine Poe's testimony at trial, it is not a basis for overlooking his sworn testimony at summary judgment.

Argintar also testified that Poe may experience some permanent discomfort in his leg, that does not create a genuine and material dispute as to whether Poe needs future medical treatment—especially next to Dr. Argintar's specific testimony that Poe will not. *See* ECF No. 21-12 at 2; ECF No. 22-7 at 5. Poe does not point to any evidence that could otherwise raise a genuine dispute on the question and, to the contrary, appears to acknowledge that his expert's testimony "may narrow Plaintiff's future-medical-damages theory," leaving this as a case about "underlying liability" and "past-damages." ECF No. 22 at 9.

The court therefore grants WMATA summary judgment as to damages for future medical care.

### III.    Conclusion

For these reasons, the court grants in part and denies in part WMATA's motion for summary judgment, ECF No. 21. WMATA is not entitled to summary judgment as to whether an expert is needed to establish the standard of care and whether the incident occurred as alleged but is entitled to summary judgment as to damages for future medical treatment.

_____

AMIR H. ALI
United States District Judge

Date:   July 1, 2026

9